[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this petition for a writ of habeas corpus alleging that his criminal trial attorney, Brian Carlow, was ineffective in assisting him by (1) failing to test the arrest warrant and hearing in probable cause; (2) failing to challenge the revocation of his bond; (3) tailing to suppress evidence and challenge venue; (4) failing to object to biased jurors; (5) failing to engage a fruitful plea negotiation; (6) failing to investigate the state's evidence and the petitioner's defense; (7) failing to contest the state's evidence by cross-examination, presentation of forensic evidence, presentation of both defense and expert witnesses and adequately preparing the petitioner for his testimony.
The petitioner and his criminal trial attorney were called as witnesses on March 18, 1998 and the hearing was continued to May CT Page 7482 11, 1998 for the conclusion of evidence and argument.
The petitioner's criminal trial arose from charges of murder, criminal possession of a pistol and carrying a pistol without a permit in connection with the death of Anthony Vitale on December 1, 1991 at 422 Crown Street, Meriden. The petitioner had moved to this address about 1 1/2 years before the shooting of the victim who lived across the street. The defendant and the victim had at first been friendly but the relationship had deteriorated principally because the petitioner believed the victim was vandalizing his motor vehicles. The victim denied the accusation. Within the month before the victim's death they had engaged in a heated argument in front of the petitioner's house during which the defendant told the victim that he would "get him." On the day of his death, the victim had gone to Mrs. Huffman's apartment which was located on the second floor of the building where the petitioner resided, to pick up his daughter who was playing with Mrs. Huffman's daughter. She obtained permission to stay longer. As the victim left he took several butter cookies at Mrs. Huffman's invitation and descended the stairs to the first floor. Before Mrs. Huffman's closed her door she heard the defendant say "you got a gun," and then immediately heard four to five gunshots fired in rapid succession. Huffman heard nothing from the victim. When Officer Zakrzewski arrived he found the petitioner on the first floor holding a .38 caliber revolver and the victim lying face up at the foot of the stairs suffering from several gunshot wounds to various parts of the body. He observed portions of a butter cookie in his mouth and three whole butter cookies grasped in his right hand. He had a loaded .357 caliber revolver in his left rear pocket of his pants. He subsequently died from a gunshot wound to his head.
At trial the petitioner admitted that he shot and killed the victim but he claimed he had done so in self-defense. He related that the victim, on the Monday before the Sunday shooting, stated to him "I told you if you call the cops on me again, I'm going to kill you." That two days later, on Wednesday, the victim had said to him "You'll be dead before the end of the week." He also related that on another occasion he had heard the victim describe a certain leather vest as his "killer jacket" which he liked to wear when he was "taking care of business". The evidence at trial indicated he was wearing the leather vest at the time of his death. The petitioner testified at his criminal trial that on the day in question he arrived home at 6 PM and sat down to view television and that 30 minutes later he put on his jacket which CT Page 7483 had a loaded .38 caliber revolver in one of the pockets to go outside to check on his car. As he stepped into the foyer his door closed and locked behind him. He then saw the victim complete his descent from the second floor and the victim said "Here I am." He testified that as he turned to reenter his apartment while asking the victim "Tony, why are you trying to hurt me." he realized his door was locked. As he turned back to face the victim he saw the victim reaching for his left rear pocket and realized for the first time that the victim had a gun. He then quickly pulled out his gun and began firing at the victim.
At the conclusion of the trial the court instructed the jury on the petitioner's claim of self-defense. However the jury returned a verdict of guilty and the petitioner was sentenced.
The petitioner's testimony was that because of his heart and blood pressure medication that he was not ready for trial without 30 days to regulate the medication. Although this complaint was made on this hearing on March 18 1998, it was not apparent to the court that he had any difficulty in understanding or in responding appropriately. He also was angry with his trial counsel for not being able to prevent revocation of his bond. However the revocation resulted from his own conduct which allowed people to accuse him of harassment. The complaints that related to the habeas petition were that his counsel did not call his list of witnesses and did not seek a plea bargain and did not prepare him for his self-defense testimony. The transcript of the criminal trial, Respondent's Exhibit A persuade the court otherwise. Although the petitioner did not offer evidence as to what such witnesses would bring to the evidence, the state did call Darlene Huffman and Eddie Moss, giving an opportunity for cross-examination. Petitioner's counsel produced Rhoda Muravnick and John Cardini. Both were friends of the petitioner who testified in the attempt to help him. Ms. Muravnick that she saw the victim do things with his left hand in support of the petitioner that he was left handed and Cardini that the petitioner had reason to be concerned about the victim's threats to the petitioner. The petitioner's present denial of facts which are consistent with the evidence produced demonstrates his absolute reliance on his claim of self-defense which prevented him from considering a plea bargain. He denies that Officer Zakrzewski observed portions of cookies in the victim's mouth and 3 cookies in his right hand. He claims that the victim pulled his gun out of his pocket even though his injuries are such that he CT Page 7484 would be unable to return it to his pocket where it was found by Officer Hoff. The victim's inability to have been able to use his gun is consistent with the testimony of Darlene Huffman who heard the rapid sequence of the event from the voice of the petitioner to the rapid fire of his gun. Ms. Huffman's testimony is not only substantiated by the physical evidence present but basically corroborated by a friend of the petitioner, Rhonda Muravnick, who saw the back of the petitioner at his apartment door and then immediately heard the rapid firing of his gun. Counsel's efforts on presenting self-defense evidence is clear from the precision of the petitioner's own testimony and the extensive justification instructions given by the court.
A successful petitioner must show that there is reasonable probability that for counsel's unprofessional errors. the result of the proceedings would have been different. Copas v.Commissioner, 234 Conn. 139 (1995): Strickland v. Washington,466 U.S. 668, 694. The petitioner has failed to show counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352, 359.
For the above reasons the court denies the petition.
Corrigan, JTR